### THE STATE OF ALABAMA VS MIDDLETON.

*Of pleas in abatement, as to the competency of a grand juror.*
*As to the competency of grand jurors.*
*Touching the verification of pleas in abatement.*
*As to the form of such plea; and the signing of the same.*

1. One against whom an indictment is preferred, may well object, by plea, to the competency of a grand juror who found the bill.

2. It is in this State, essential to the competency of a grand juror, that he should be a free-holder or house-holder, when his name is returned to the clerk by the sheriff.

3. Thus, it is a good plea to an indictment, that one of the grand jurors who found it, was not a free-holder or house-holder, at the time the list of jurors was returned.

4. Though it would seem, that the competency of persons to act as grand jurors, should not be tested by the fact of their continuing free-holders or house-holders, up to the time of being *drawn* to serve as such.
   If persons possess this qualification when their names are *returned* by the sheriff, though afterwards they are divested of it—they would be competent jurors.

5. All the acts of this State relating to juries, are to be construed *in pari materia*, as forming parts of an entire system.

6. A plea in abatement, that one of the grand jury, who found an indictment was not a free-holder or house-holder, *at the time the grand jury were impanneled, or at the time of an indictment found*, would be bad.

7. Such a plea to be available, should aver, that the juror was not a free-holder or a house-holder, *at the time his name was returned to the clerk, by the sheriff.*

8. A plea in abatement, which, at the foot thereof, has the words, "sworn to and subscribed in open Court:" signed by the party pleading, and attested by the clerk, is sufficiently verified, without a formal affidavit.

9. A plea in abatement, to the competency of a grand juror, who found the bill, may properly conclude with a prayer of judgment, that the indictment be quashed.

10. Nor is it required that such plea shall be signed by counsel : the pleading of it in proper person would seem most regular.

At the September term, eighteen hundred and thirty-six, of the Circuit Court of Tuskaloosa county—John Thomas, foreman, James Pinion, N. W. Ware, Wiley Watson, Curtis Ivy, James M'Creight, Dennis Springer, Jesse Hughes, Thomas M'Crackin, John Poe, sen., David Baugh, Thomas B. S. M'Gehee, John Terrell, and William L. Reese, good and lawful men of said County, impanneled, sworn and charged to inquire for the body of Tuskaloosa county, within the State of Alabama, exhibited a bill of indictment against the defendant, in the following words and figures, to wit :

"The State of Alabama. Circuit Court for Tuskaloosa county. Fall Term, 1836. The grand jurors for the State ef Alabama, elected, impanneled, sworn, and charged to inquire for the body of Tuskaloosa county, upon their oath, present, that Zachariah Middleton, late of said county, in the county aforesaid, on the 26th day of July, in the year of our Lord, 1836, with force and arms, at ————, in the county aforesaid, in and upon one Nimrod Freeman, in the peace of God, and the

said State, then and there being, did make an assault, and him, the said Nimrod Freeman, then and there did beat, wound and ill treat, and other wrongs, to the said Nimrod Freeman then and there did, to the great damage of him, the said Nimrod Freeman; and against the peace and dignity of the State of Alabama. A. B. Meek, Attorney General of the State of Alabama. John Thomas, foreman of the grand jury. Endorsed—a true bill."

And at the March term of the same Court, the defendant came personally, and filed his plea in abatement, as follows, to wit:

"The State of Alabama *vs* Zachariah Middleton. Assault and battery. And the said Zachariah Middleton, in his own proper person, comes, and the said indictment being read to him, says, that he ought not to be charged on the said indictment—because, he says that James M'Creight, one of the grand jurors, by whom the said indictment was found, was not, at the time the grand jury were impanneled, nor at the time the said indictment was found as aforesaid, a free-holder, nor was he a house-holder, within the county of Tuskaloosa aforesaid; and this he is ready to verify.—Wherefore he prays judgment of said indictment, and that the same may be quashed, &c. Zachariah Middleton. Sworn to and subscribed in open Court, March 27th, 1837, before J. J. Samuel, clerk."

And thereupon, the Attorney General, who prosecuted in behalf of the State, said, that the plea of the said defendant, pleaded in the prosecution, and the matters and things therein contained, as therein

set forth, were not sufficient in law, to bar or pre-clude, the said State from prosecuting the said in-dictment, against the defendant, and this the At-torney General, who prosecuted as aforesaid, was ready to verify by the record, when and where the Court might order and direct; wherefore, he prayed judgment, and that defendant might answer over, &c. To which there was a joinder by defen-dant, &c.

And then came the Attorney General, and the defendant, and all and singular the matters of law arising upon the demurrer, to the defendant's plea, by him pleaded in abatement, being seen, heard, and by the Court fully understood, it seemed to the Court, that the plea and the matters therein con-tained, were not good and sufficient in law, to quash the indictment; and leave was given the de-fendant to plead over, and the defendant having pleaded over, said he was not guilty, in manner and form as charged in the indictment, and for trial put himself upon the country, and the Attorney General did the same; and thereupon came a jury, who being elected, tried and sworn, upon the issue of traverse joined, the truth to speak, on their oaths, said, the defendant was guilty in manner and form, as charged in the indictment, and they assessed a fine of ten dollars against him by reason thereof: It was therefore considered by the Court, that the State, for the use of the county aforesaid, should recover of the defendant, the fine aforesaid, so as-sessed by the jury, and the costs of the prosecu-tion, &c.

And it was agreed that the point reserved in the

case, and referred to this Court, was, upon the demurrer of the State, to the plea in abatement, and whether the plea was sufficient in law, to quash the indictment.

*E. W. Peck*, for the defendant.
The *Attorney General*, contra.

COLLIER, C. J.—The defendant was indicted in the Circuit Court of Tuscaloosa, for an assault and battery, and being brought into Court, he pleaded in proper person, that one of the grand jurors, (naming him,) by whom the indictment was found, "was not, at the time the grand jury were impanneled, nor at the time the indictment was found, a freeholder, nor was he a house-holder within the county of Tuscaloosa." The plea concluded with a verification, prayed judgment of the indictment, and that the same be quashed; and is verified as follows:

"Sworn to and subscribed, in open Court, 27th of March, 1837.
J. J. SAMUEL, Clerk." } ZACH. MIDDLETON."

The Attorney General demurred to the defendants plea, and the demurrer being sustained, the questions of law thereupon arising, were referred to this Court for decision, as novel and difficult.

The argument has presented to our consideration, these questions:

1. Can a party against whom an indictment is found, object by plea, to the competency of a grand juror?

2. If the objection can thus be made, does the plea contain matter of disqualification?

3. Is the plea sufficiently verified?

4. Is it good in point of form?

5. Should it not be signed by counsel?

1st.—By the twelfth section of the *Declaration of Rights*, (of our State constitution,) it is declared, that, "'No person shall, for any indictable offence, be proceeded against criminally, by information; except in cases arising in the land and naval forces, or the militia, when in actual service, or, by leave of the Court, for oppression or misdemeanor in office."

By the eleventh section of the same article, it is provided, that, "No person shall be accused, arrested or detained, except in cases ascertained by law, and according to the forms which the same has prescribed, and no person shall be punished, but in virtue of a law, established and promulgated, prior to the offence, and legally applied."

The section first recited, is a clear inhibition to proceed by information against one, charged with an indictable offence, and is equivalent to an express guaranty to the accused, of the right to demand an indictment, before he can be put upon his trial, as an offender, "against the peace and dignity of the State," except in the cases excepted. Assuming this as a position, which can hardly be denied, let us inquire into the nature of an indictment.

An indictment may be defined to be an accusation, at the suit of the State, by the oaths of a grand jury, (or at least twelve of their body,) of the same

5 P,          62.

county wherein the offence was committed, impanneled to inquire of all offences in the county, determinable in the Court, which they are appointed to aid. It is a brief narrative, of an offence committed by any person, which the public good requires should be punished; and hence is called, a prosecution at the suit of the State.—(3 Bac. Ab. 542,–4.)

The action of a grand jury, being essential to an indictment, it would follow, that a paper having all its forms, but which has never been before them, or which a less number than are authorised by law, have concurred in returning a "true bill," is not a legal accusation. And on such paper, the accused, cannot, according to the eleventh section of the declaration of rights, be put upon his trial.— Nor would the case be changed, though this representation of an indictment should be found by the requisite number of grand jurors, if some of them were disqualified, so as not to be, what the law terms, "good and lawful men." In order to authorise one to "be accused, arrested or detained," it is necessary, not only that the law should have ascertained the offence, but in the accusation, arrest or detention, *the forms which the law has prescribed, as preparatory to its punishment, should be observed;* and it is not only essential, to authorise the infliction of punishment, that the law be established and promulgated prior to the offence, *but that it be legally applied.*

It hath been remarked, that for an indictable offence, the law authorises the accused to insist upon an indictment; that to constitute a good in-

dictment, at least twelve of the grand jury should concur in returning it, a "true bill." An indictment found by an incompetent grand jury, is not a proceeding according to the forms which the law has prescribed, and is not one upon which the accused, compatibly with his constitutional rights, can be tried. Now here is a clear right, but how shall it be made available?

In the case of the *State vs Boyington*, (2 Porter's R. 100,) it was determined by a majority of this Court, that an exception to the competency of a grand juror, for disqualification from personal causes, can only be taken by challenge to the juror, before indictment found; and that "it is the acknowledged privilege of all persons present, of those anticipating prosecutions, or others, as the friends of the Court, to point out the objection, and cause the exclusion of the juror." But while the Court thus recognises the right of challenge to a grand juror, either by one to be prosecuted, or as an *amicus curiæ*, they determine that his incompetency could not be pleaded, in avoidance of an indictment at common law.

With entire respect for the opinions of the members of the Court, who concurred in the judgment, in the case of the *State vs Boyington*, we are constrained to dissent from their conclusion. Let it be granted that it does not satisfactorily appear from the elementary authors, whether the right to plead in avoidance of an indictment, the incompetency of a grand juror, was introduced by the statute of *Henry the IV*, or was known to the common law, and we think, the difficulty of determining the

question, should, in itself, induce the allowance of the plea. In adjudging legal questions of doubt, the true rule in favor of life and personal liberty, is, to lean to the accused.

If the case of the *State vs Boyington,* was not likely to be productive of injury, and to deny in many instances, the right to insist upon a legal indictment, we should be the less disposed to depart from it. It imposes upon every one who may by possibility be indicted, the necessity of being present in Court, and scrutinizing the grand jury before they are sworn. To shew the unfitness of such a requisition, those who are accused of offences, and confined in jail, are to be brought into Court, to supervise the impanneling of the grand jury, or they are to be deprived of the constitutional guaranties, afforded by the eleventh and twelfth sections of the first article of our constitution. Again,—the man of peaceful habits, who never expects to become obnoxious to criminal justice, yet after the grand jury are inpanneled, he is concerned in a rencounter, for which he is indicted; on coming into Court, and objecting to the incompetency of a grand juror, he is told that his objection, though it rests upon the basis of the constitution, cannot be entertained:—that having pretermitted the occasion to aid the Court, with his friendly advice, it is no longer available.

In our judgment, the statute of *Henry the IV,* was not introductive of a plea to the disqualification of an indictor, but such plea was allowable at common law, of which the statute was in affirmance. The statute was in advancement of the,

liberty of the subject, and was doubtless induced by a desire of the Commons, to establish as firmly as practicable, the barriers to the usurpations of the Crown and the assumptions of the Clergy, both of which, the history of that period informs us, were unwarrantably great,—so as to keep alive, a spirit of jealousy, between the representatives of the people, and the aristocracy of the nation.

Upon principle, such plea is permissible: No man is required to defend himself, until an indictment is found, and cannot be held to have waived any matter of defence, of previous occurrence, by an omission to insist on it earlier. The case of the *United States vs Burr*, is not a contrary authority: there, the objection was to particular jurors, for favor. The prisoner was in Court, and the grand jury had been summoned for the purpose of examining the charge against himself and others, who were supposed to be implicated with him. And it is not even there determined, that a plea to the competency of a juror, would not have been entertained; though for the *particular objection* we are considering, we think it would not.

2. By the first section of the act of eighteen hundred and eleven, (Aikin's Digest, 296,) the sheriff of every county, is required, within two years, to furnish to the clerk of the Superior Court of his county, a list of free-holders and house-holders within the same: which list is to be filed in the clerk's office, and the names returned, to be put in a box, to be kept by the clerk for that purpose.— The second section, prescribes the manner in which the jury shall be drawn from these names.

The first section of the act of eighteen hundred and twenty-six, directs, that immediately after the sheriff of any county, shall have returned to the clerk of the Circuit Court of his county, a list of free-holders and house-holders, within the same, it shall be the duty of the Judge of the County Court, with other officers, (particularly named,) to assemble at the court house of their county, on a day, to be appointed by the clerk of the Circuit Court, and to select from the list of free-holders and house-holders, such persons as they, or a majority of them, may deem qualified to serve on juries; and the names of the persons so selected, shall be put into a box, to be kept by the clerk, for that purpose; and the persons who shall be selected in such manner, shall be liable to serve on juries, and shall be chosen in the manner now prescribed by law.

By the first section of the act of *January*, eighteen hundred and thirty-six, it is enacted, that after its passage, the clerk of the Circuit Court, and the sheriff, under the superintendence and inspection of the Judge of the County Court, in each county, shall select from the whole number of persons qualified to serve on juries, twenty-four suitable persons, best qualified, in their opinions, to serve on the grand jury, for each term of the Circuit Court, in the several counties in this State, &c.— These are the only provisions in our statutes, which it is deemed material to notice.

We think it very clear, that in this State, it is essential to the competency of a juror, that he should have been a free-holder or house-holder, when his name was returned by the sheriff to the

clerk. Our acts of the legislature can not be considered as merely directory, in pointing out the mode in which the jury are to be drawn, nor are their provisions, in defining the qualifications of the jurors, merely recommendatory. The privilege, to any particular class, of serving on juries, is not guarantied by the constitution—it is only the inviolability of jury-trial, which is secured: this the legislature have not interfered with.

. All the acts relating to juries, are to be construed *in pari materia*—as constituting an entire system. The act of eighteen hundred and eleven, impliedly excludes all persons who are not free-holders and house-holders, from being drawn on the regular jury for the term, and makes the one qualification or the other, essential to their capacity; and the implication, according to all rules of construction, is quite as potent, as if express negative terms were employed.

The act of eighteen hundred and twenty-six goes beyond that of eighteen hundred and eleven, and authorises the individuals charged with the selection of the jury, to distinguish between free-holders and house-holders, and to exclude such as they may think unfit for the office. A discretion, which we think well given; but perhaps not always wisely exercised.

The act of eighteen hundred and thirty-six must be taken in connection with the act of eighteen hundred and twenty-six: the same qualifications are necessary under the former as under the latter; and the same discretion in the selection of the jury. But the plea does not, in our opinion, conform to

the act of eighteen hundred and twenty-six. That act contemplates a return by the sheriff to the clerk, of a list of the free-holders and house-holders in his county, and requires, that from this return a selection shall be made of persons deemed suitable jurors. We have no statute, making it necessary that the free-holders and house-holders shall continue such up to the time they are actually drawn to serve on the jury: if they possess this qualification when their names are returned by the sheriff, though they may afterwards part with it, they are competent jurors. The plea only negatives the fact, that the juror objected to, was unqualified, at the time the grand jury were impanneled, or the indictment found. Now, all this may be true, and the juror have been free from all exception.

As the plea asserts the disqualification of a grand juror, it is essential to its legality, that it should disclose such facts, which, if true, would make out a good answer, to the indictment. From what has been said, it will be apparent, that it is necessary, in order to the incompetency of a juror, for the cause relied on, that he should have been neither a free-holder or house-holder, when the list was returned to the clerk; and the omission, thus to state the condition of the juror, was fatal to the plea

3. We think the plea was sufficiently verified: it would have been more regular, had the affidavit been more full and complete in itself. Yet, the terms, " Sworn and subscribed in open court, 27th March, 1837," signed by the defendant, and attes-

ted by the clerk, introduced as they are, at the foot of the plea, must be held to mean, that the defendant has sworn to its truth, and has attested his oath by subscribing the plea.

4. The plea is unobjectionable in point of form : it does not question the jurisdiction of the Court, nor indeed should it; it arraigns the legality of the indictment, because of the incompetency of a grand juror : and hence properly concludes with the prayer of judgment, that it be quashed.

5. There is no statute or rule of Court, which requires such a plea to be pleaded by counsel. A party may appear in his own defence or by counsel ; but as he is personally present, on the trial of an offence against the State, it would seem most regular, that the plea should be in proper person; though he may have the aid of counsel, in determining what defence he should interpose, and how it should be made available, as well as in sustaining it for him.

Our opinion is, that the plea is defective in substance; that the demurrer was properly sustained; and that the judgment must be affirmed.