No. 9045.

THE STATE OF LOUISIANA VS. JOE MCGEE.

A juror who, upon his *voir dire*, said he had formed a fixed deliberate opinion. but on further interrogation admitted that he should be guided solely by the testimony on the trial and the law as applied thereto, and who had not talked with any of the witnesses. and had no bias or prejudice, is a good juror.

The fact that one of the grand jurors who found the bill is an unnaturalized alien. cannot be taken advantage of in a motion for arrest. This personal disqualification of a grand juror may be pleaded in abatement, and whatever is pleadable in abatement is waived by a plea in bar.

Non-residence of a petit juror in the parish where the trial is had for twelve months immediately preceding the trial cannot be the subject of a motion in arrest.

A judge can and ought to interpose when a useless and irrelevant examination of a witness is going on, and prevent the waste of time and distraction of the attention of the jury.

Confessions made voluntarily, and without the exercise of any influence to extract them. are admissible. State vs. Parks, 2J A. 251, overruled.

APPEAL from the Tenth District Court, Parish of Red River. Logan, J.

J. C. Egan, Attorney General, for the State, Appellee.

J. H. Pierson for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J. The defendant was convicted of murder and was sentenced to be hanged.

1. Sol. Bell and J. J. Patton were challenged for cause as jurors, the objection being that they had formed fixed and deliberate opinions of the guilt of the accused. The challenge having been disallowed, the prisoner excepted.

Bell having stated on his *voir dire* that he had formed a fixed deliberate opinion, and that it would take strong evidence to remove it, was thus interrogated by the judge:

Q. Do you mean that your opinion is so fixed and deliberate that your mind would not yield to the law and the evidence?

A. No; my opinion would yield to the law and the evidence.

Q. Have you any prejudice or bias in favor of or against the accused, or have you talked to any of the witnesses?

A. No; I have no bias or prejudice, nor have I talked to any of the witnesses. I have heard only rumors.

Q. Can you and will you do justice to the State and to the accused, if selected as a juror?

A. Yes; I can and will do justice to the State and the accused.

State vs. McGee.

Patton, having made the same declaration touching a fixed and deliberate opinion, was interrogated in like manner by the judge, and answered that his opinion was very strong, and it would take "pretty stiff" evidence to change it—that he had learned nothing of the case except from rumors, and had not talked with any of the witnesses, and although it would take strong evidence to remove his opinion, yet if selected as a juror he could and would render a verdict in accordance with the law and the evidence. And again ; "certainly, if sworn on the case as a juror, I would be guided entirely by the law and the evidence, and not by any opinion I may now have."

The judge ruled rightly. If jurors, frankly avowing the formation of an opinion which they mis-call "fixed," can be rejected when they asseverate their ability and their willingness to disregard that opinion, and to be guided solely by the testimony upon the trial and the law as applied thereto, the difficulty usually attendant upon obtaining a jury when a startling crime has been committed will become an impossibility, and the worst malefactors will go unwhipt of justice. If there is any expression in Ricks' case, 32 A. 1098, countenancing the doctrine that a deliberate opinion once formed is good cause for challenge, notwithstanding the proffered juror shall avow himself free from bias and open to receive other impressions, it has been modified by the later cases of State vs. Desmouchel, 32 A. 1241, and State vs. Hornsby, 33 A. 1110.

2. One of the grounds of the motion for a new trial is that Philip Goldman, one of the grand jurors who found the bill, is not a citizen of this State and is an unnaturalized foreigner, and, therefore, was not a competent juror.

The question here is, whether that incompetency can avail the defendant when he defers action upon it until after conviction, and in a motion for a new trial. It has been held in State vs. Parks, 21 A. 251, that the accused may raise the objection after verdict, but we think incorrectly. The ruling is opposed by both English and American authority.

A disqualification of a grand juror may be taken advantage of by an accused party by a motion to quash, or by a plea in abatement, but either must be made before he has pleaded to the indictment. The universal rule is that whenever and however it is permitted to the accused to avail himself of such disqualification, he is peremptorily shut off from it when he waits till conviction, and prefers it for the first time in a motion for arrest. Courts refuse to hear objections to persons com-

posing the grand jury after the case has been tried by the petit jury. Whatever is pleadable in abatement is waived by a plea in bar. 1 Bishop Crim. Law § 997.

It was questionable whether a defendant could take advantage of the incompetency of a grand juror at any time or in any way after bill found. In Massachusetts it was held that objections to the personal qualifications of a grand juror cannot affect any indictments found by them after they have been received by the court and filed, Com. vs. Smith, 9 Mass. 107, though this was doubted in a subsequent case but not overruled. Com. vs. Parker, 2 Pick. 563. In New York it is too late for the defendant to raise the objection of informality in the organization of the grand jury, after issue joined by a plea of not guilty, and a petit jury has been impanelled, and the State has closed its case. People vs. Griffin, 2 Barbour, 427, and in Alabama the court held that the defendant could not except to the personal qualifications of grand jurors, nor plea in bar of an indictment that one of the jurors who preferred it was an alien, after the indictment had been found, accepted and filed. Boyington vs. State, 2 Porter 100. Though it was afterwards held that the defendant was not thus restricted, but might plead these matters in abatement. State vs. Middleton, 5 Porter 484. Mississippi holds the same doctrine as New York. Barney vs. State, 17 Smedes & Marsh. 68. In Maine, Tennessee and Texas, the disqualifications of a grand juror must be taken advantage of by a motion to quash or plea in abatement, and in North Carolina an objection to a grand juror comes too late after a plea to the felony. State vs. Martin, 2 Ired. 101, and that is the English rule.

Some of the American courts, it thus appears, relaxed the rule that the organization of the grand jury cannot be inquired into after the bill has been filed, but nowhere is the defendant permitted to wait until conviction and a motion for arrest, to urge the objection that one of the grand jurors who found the bill is an alien, or has other personal disqualification. 1 Wharton Crim. Law, § 472.

3. In the same manner we dispose of another ground in the motion for arrest, i. e., that William Scott, a petit juror, was disqualified by want of residence in the parish where the case was tried for twelve months preceding the trial.

The objection comes too late.

4. A bill was reserved to what is said to be "an expression of opinion by the judge as to the force and effect of evidence," made in this wise.

State vs. McGee.

The defendant's counsel was questioning a witness what was said to him by the prisoner while in jail, when upon objection being made by the prosecuting officer that the prisoner could not make evidence for himself, the counsel stated that the object of the testimony was to prove insanity, whereupon the court opened the door for the admission of everything that might tend in that direction, a complaisance that the district attorney seems not to have objected to. The witness then and thus spoke:

"I was at the jail soon after the preliminary trial, with John Ratcliff, Joseph Ratcliff and fifteen or twenty other persons. I said to the prisoner, 'Joe, how are you?' Joe replied, 'I am pretty well, only I don't get enough to eat.' 'Joe, it is mighty hard that you should suffer for what another man has done.' And Joe replied, 'Yes, it is.' 'Joe, did you make any confession since you have been in jail?' And Joe, the prisoner, replied, 'I have not.'"

A second witness had repeated this, and a third was about to follow in the same line, when the judge interposed, saying to the prisoner's counsel, "I think you are abusing the rule. The witness can only testify as to the acts going to show insanity." That is the expression of opinion on the force and effect of evidence which provoked the bill.

We scarcely know how to treat it seriously. The only wonder is that the judge had not interposed sooner, and put a stop to the balderdash more vigorously. He should not have permitted its introduction at all. It was calculated to distract the attention of the jury, had no relevancy or bearing upon the question of insanity, and the time of the court was wasted in listening to it.

5 and 6. These two bills are to the admission of the confessions of the prisoner. These confessions are his answer to a question of a deputy sheriff—"why did you let the old cook-woman see you?" "I did not think she saw me;" and to a remark of the sheriff to him—"Mayfield has gone back on you," this Mayfield being a witness by whom the prisoner expected to prove an alibi, "your case looks gloomy."

This is all the information the bills give us, and they are drawn at great length. It is needl' to say the matter is unimportant, but if a confession of guilt showi t, which the bills give no account of, it was made voluntarily, and without the exercise of any influence to extract it, and was admissible. State vs. Hartley, 34 A. 147.

Judgment affirmed.