No. 12,931.

STATE OF LOUISIANA VS. NICK RAMSEY.

A juror who stated on his *voir dire* that he had formed an opinion of the case, was asked by the court if he could lay it aside and decide the case according to the evidence adduced and the law as charged. He answered: "Yes, sir; I think I can do that." Pressed further as to whether he felt satisfied he could do so, replied: "I believe I could, but then I have got a fear on my mind; I have never felt I would make a competent juror." *Held:* The challenge for cause should have been sustained, differentiating previous decisions.

ON APPEAL from the Third Judicial District Court for the Parish of Claiborne. *Barksdale, J.*

M. J. *Cunningham*, Attorney General, *Charles B. Roberts*, District Attorney (*E. H. McClendon* of Counsel), for Plaintiff, Appellee.

J. A. *Richardson* and J. W. *Holbert* (*C. J. Boatner* of Counsel), for Defendant, Appellant.

Argued and submitted November 26, 1898.
Opinion handed down December 19, 1898.

The opinion of the court was delivered by

BLANCHARD, J.    From a verdict against him of manslaughter and a sentence of five years and six months at hard labor, defendant appeals.

Six bills of exception to as many rulings of the trial judge appear in the record.

The first bill brings up for review that phase of the trial relating to the challenge for cause by defendant of the juror W. W. King. The challenge was overruled, King was sworn as a juror and sat on the case.

It is averred that his answers on the *voir dire* show his incompetency and that the contrary ruling is reversible error.

It is shown that after the challenge for cause was overruled defendant was powerless to exclude King from the panel because of the fact that he had, previous to the calling of King, exhausted his peremptory challenges.

The questions put to King by counsel for defendant and his answers

thereto, and those put to him by the judge and his answers thereto, on his *voir dire*, are annexed to and made part of the bill.

This examination was as follows:—

" W. W. King sworn,—

" Q. What did you say your opinion was based on, Mr. King?

" A. Well, I have talked with Mr. Shaw at different times and I also had a talk with Judge Richardson about it since this trial.

" Q. Mr. Shaw is a witness in the case and the principal prosecutor in the case is he not?

" A. I think he is.

" Q. Well, now then, have you read the statement of Mr. Kelly in the paper?

" A. Yes, sir.

" Q. And from that statement, and from the statement of Mr. Shaw, you have formed an opinion?

" A. Yes, sir.

" Q. Is that a fixed opinion at this time?

" A. No, sir, it is not.

" Q. Are you certain that it will have no weight with you if you are sworn as a juror?

" A. Well, it might have some.

" Q. You doubt your ability then to lay aside that opinion and try this man fairly and impartially according to the evidence here?

" A. Well, it might have some weight with me, but, of course, if I was sworn to lay it aside, I would do my best.

" Q. Mr. Shaw is your neighbor, is he not, Mr. King?

" A. Yes, sir."

By the court:

" Q. You state that Mr. Shaw is a witness. Do you know that he is a witness?

" A. Well, I understand that he is here on the trial, and I understood from his being here that he was one of the prosecutors.

" Q. But, as to his being a witness is what I want to know.

" A. I don't understand that he is a witness. I have never understood it that way, at least.

" Q. You say you have had some talk with Judge Richardson since the last trial?

" A. Yes, sir.

" Q. You read what purported to be Mr. Kelly's evidence in the newspaper shortly after this thing occurred?

" A. No, sir; I didn't read that.

" Q. Now, what I want to know is this: Have you any bias or prejudice either for, or against Nick Ramsey?

" A. None at all.

" Q. If you are sworn as a juror, can you lay aside the opinion that you now have and decide this case according to the evidence that will be given here before you, and according to the charge that will be given you as to the law?

" A. Yes, sir; I think I can do that.

" Q. Do you feel satisfied that you can do that, Mr. King?

· " A. I believe I could; but then I have got a fear upon my mind. I have never felt that I would make a competent juror.

"Q. Well, that dread that you have is what causes you to say that your opinion might have some weight with you, possibly?

" A. Well, yes, sir."

The judge's reasons for overruling the challenge for cause are stated in the bill, thus:

" Counsel for defendant had the stenographer take down their examination of the juror tendered and the questions propounded by the court and the answers thereto, but the examination by counsel for the State is not attached. Taking Mr. King's answers all the way through to myself, and to counsel on both sides, I was satified— thoroughly satisfied—that W. W. King was a fair and impartial juror, and his sole reason for fearing that his opinion might have some weight, arose from his lack of confidence in his competency to make a good juror.

"I was satisfied he could lay his opinion aside and depend on the evidence adduced on the trial.

" Besides this, his opinion was based entirely on hearsay so far as the merits are concerned. Mr. Shaw was a witness to some little circumstances occurring after the homocide, but had no personal knowledge of the homocide, and Judge Richardson was not a witness."

It is insisted by the State that the trial judge, in holding the juror competent, is within the rule laid down by this court in such cases.

· We are constrained to hold otherwise.

None of the decisions relied on go to the extent here shown to bring the challenged juryman within the rule of competency.

In State vs. McGee, 36 La. Ann. 206, the juror Bell, while stating he had formed a fixed, deliberate opinion which would take strong evidence to remove, replied decisively to the questions of the court that his opinion *would* yield to the law and the evidence, that he had no bias or prejudice, and had talked to none of the witnesses; having heard only rumors. To the further inquiry if he could and would do justice by the State and the accused, if selected as a juror, answered unhesitatingly " yes I can and will do justice to the State and the accused." The juror Patton, in the same case, answered to the same effect.

Under these circumstances it was rightly adjudged they were competent jurors, and under the same state of facts we would affirm the ruling, holding the doctrine announced in State vs. Ricks, 32 La. Ann. 1101, too broadly stated, and adhering to that declared in State vs. Desmouchet, 32 La. 1241, State vs. Hornsby, 33 La. Ann. 1110, State vs. De Rance, 34 La. Ann. 186, and other decisions.

In State vs. Dugay, 35 La. Ann. 327, the jurors were properly held competent, having testified their opinions would yield to the evidence and that they would go into the jury box unhampered by the same.

They had no doubt of their own competency as jurors from the standpoint of being able to determine the case only from the evidence as adduced, and the law as expounded on the trial. Far different was the case at bar.

In State vs. Melton, 37 La. Ann. 77, the challenged jurors stated on their *voir dire* that notwithstanding the opinion formed by them they were able to render a fair and impartial verdict according to the evidence and the law.

That is not this case. If the juror King had made that answer we would hold him competent. But when asked by the Court if he was satisfied he could lay aside the opinion he had formed and decide the case according to the evidence and the law, he answered only that he *believed* he could, and coupled with it this significant and warning expression: " *but then I have a fear on my mind;* I have never felt that I would make a competent juror."

This demonstrated his disqualification; bias was plainly discernible; he himself was of the opinion he ought not to serve on the case. Why? Clearly because his mind was not free from bias.

There could be no other reason. He carried both his bias, and his belief that he was not competent as a juror, into the jury box; he went there with an opinion of the case; he had said only he *believed* he could render a verdict according to the evidence adduced on the trial and the law as expounded by the court—not that he was able to do it, or would do it. He would do his best, was the utmost he could say, to lay the opinion he had -formed aside, if he was sworn to do so.

If he could lay it aside he would be a competent juror; if he could not, he would not be. *He went into the jury box in doubt himself that he could lay it aside.* This disqualified him. The opinion he had formed was based on what Shaw, one of the prosecutors, and who is said to be his neighbor, had told him about the case. He should have been excused. He evidently had much weight in the deliberations of the jury. He was prominent enough to have been chosen its foreman.

We likewise differentiate from the instant case, State vs. Dorsey, 40 La. Ann. 740; State vs. De Rance, 34 La. Ann. 186; State vs. Ford. 37 La. Ann. 443; State vs. Le Duff, 46 La. Ann. 546; State vs. Williams, 40 La. Ann. 1140.

The views above expressed render it unnecessary to pass upon the questions raised in the other bills of exception taken during the trial.

·For the reasons assigned it is ordered, adjudged, and decreed that the verdict, sentence and judgment appealed from be annulled, avoided and reversed, and that this case be remanded to the court *a qua* to be proceeded with according to law.

NICHOLLS, C. J., takes no part, being absent ill.